Dallas C. COFFMAN, Appellant,

v.

Joe HAMMER et al., Appellees.

Supreme Court of Tennessee.

March 14, 1977.

C. S. Rainwater, Jr., T. E. Forgety, Jr., Dandridge, for appellant.

Ralph H. Noe, Jr., Morristown, for appellees.

## OPINION

HENRY, Justice.

This appeal from the decision of the Chancery Court of Grainger County, upholding the County Beer Board's denial of a permit for the retail sale of beer for off-premises consumption, arises under Chapter 2, Title 57, Tennessee Code Annotated.

Appeals to this Court in cases involving beer permits are accompanied by a presumption of the correctness of the action of the trial judge. Such action will not be disturbed on appeal unless the evidence preponderates against it. *Lones v. Blount County Beer Board*, 538 S.W.2d 386 (Tenn. 1976). Upon the application of this standard we find that the Chancellor's action is without substantial support in the record and that the record evidence preponderates against his conclusions.

As we pointed out in *Howard v. Willocks*, 525 S.W.2d 132 (Tenn.1975) and reiterated in *Lones, supra*, under the 1961 amendment to Sec. 57–205, T.C.A., "the Legislature mandated that an applicant for a beer permit, who complies with all the legal requirements, shall have such license or permit issued to him" leaving "the only issue . . . as being 'whether or not an applicant, under the proof, has met all the said conditions and provisions.'" 538 S.W.2d at 389.

There are five (5) basic requirements of Sec. 57–205, T.C.A. It is tacitly conceded or shown by the record that four of these requirements have been met, leaving at issue only the applicant's compliance with the third requirement, which reads in pertinent part as follows:

Third, that no such beverages will be sold except at places where such sale will not cause congestion of traffic or interference with schools, churches, or other places of public gathering, or otherwise interfere with public health, safety and morals; the county court having the right to forbid such storage, sale or manufacture at places within two thousand (2,000) feet of such places of public gatherings in its discretion.

The Beer Board, in denying the permit, assigned the following grounds, which we summarize or quote as follows:

1. That U.S. Highway 25E, is a major, heavily travelled, and dangerous thoroughfare; that the issuance of the permit would create additional traffic congestion and create additional hazards.

2. That the sale of beer "will lead to its consumption, and in most instances, a portion of that consumption will occur as soon as the purchaser gets onto the highway

. . . greatly increasing the danger to the safety of the public . . . "

3. That discarding beer cans and bottles along the highway is "detrimental to public health, the environment, and constitutes a public nuisance."

4. "That statistics prove that many crimes and lawless conduct originate with the consumption of alcoholic beverages."

5. "That the sale and consumption of beer destroys the home, creates poverty and misery, dethrones reason, defiles innocence, —yea, literally takes the bread from the mouths of little children, and topples men and women from the pinnacles of righteousness and gracious living into the bottomless pits of degradation and despair, shame and helplessness and hopelessness."

The last two grounds express the apparent philosophy of the Grainger County Beer Board that beer is a dangerous and deadly commodity, the consumption of which leads to dire and disastrous consequences. We have no disposition to take issue with these strongly held convictions, but we do point out that they obviously constituted the primary motivation for the denial of this permit.

As this Court said in *Ewin v. Richardson*, 217 Tenn. 534, 541, 399 S.W.2d 318, 321 (1966), "[t]hey may well be right but the courts are without authority to give them relief." Their prayer for relief must be addressed to the state legislature.

However, we share the concern of all good citizens at the litter and trash along the shoulders and right-of-ways of our public roads, but this affords no ground for the denial of a beer permit. Indeed, beer drinkers have no monopoly on that unfortunate predilection of some members of the public to mar the beauty of public thoroughfares by unlawfully discarding bottles, cartons, trash, garbage and refuse of every known variety, admittedly creating an unsightly mess that could well be characterized as a nuisance.

The only legitimate issue before the Board, the trial court, and this Court, with any semblance of support in the record, is whether the location of the premises will create hazardous traffic conditions, interfere with schools or adversely affect the public health, safety and morals. The Chancellor held that the issuance of this permit would have precisely those effects. We find no substantial support in the record for these conclusions.

The proposed premises has a spacious parking area. The building sits back approximately one hundred feet from the highway. Visibility is 1,000 feet or more in either direction along the highway. U.S. Highway 25E is heavily travelled, and school children are picked up and deposited in the immediate proximity to the proposed location. The nearest church is about one mile away and the nearest school four or five miles.

It must be borne in mind that the appellant seeks a permit to operate a "package" store. There is a substantial difference between an outlet selling for off-premises consumption and the conventional beer outlet where beer is consumed on the premises.

We can find nothing in the record from which it might be fairly concluded that the sale of beer for off-premises consumption would stand on any different footing from the sale of any other commodity. We are not so naive as to suggest that such sales will not have any impact on traffic conditions. Every new retail establishment, irrespective of its stock in trade, would necessarily increase traffic.

The applicant's proposed location is an existing establishment—a combination grocery store and service station. We are unable to perceive any difference, in principle, between a purchase of a six-pack of beer to go and a purchase of a six-pack of any non-alcoholic beverage. In each case the purchaser comes, he buys and he goes.

We find no evidence to indicate any unreasonable increase in traffic, nor to indicate any adverse effect upon the public welfare. As we said in *Lones, supra,* "There is not the slightest suggestion that this particular outlet will cause congestion of traffic or create any other condition not already in existence." 538 S.W.2d at 390.

The Beer Board was obviously hard put to find excuses for denial. It heard this case on January 22, 1974 and did not announce a decision until December 10, 1975, keeping the case under advisement for approximately one year, ten months and eighteen days. If the public interest was so adversely affected, the Board could have acted with greater dispatch.

We infer from the argument of counsel that the Grainger County Beer Board has never issued a permit for the retail sale of beer. This Beer Board is bound to abide the laws of the state. Its collective personal notions of morality are secondary to its sworn duty to uphold the law. Under the law this permit must be issued.

We reverse the judgment of the Chancellor and remand for the entry of an order directing the Grainger County Beer Board to issue forthwith to Dallas C. Coffman, a permit authorizing and permitting the sale of beer in accordance with his application.

Reversed and remanded.

COOPER, C. J., and FONES, BROCK and HARBISON, JJ., concur.