# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

| | |
|---|---|
| JERI ST. JOHN d/b/a JERI'S, | ) |
| | ) |
| Plaintiff/Appellant, | ) Henry Chancery No. 17636 |
| | ) |
| VS. | ) Appeal No. 02A01-9804-CH-00095 |
| | ) |
| BEER PERMIT BOARD, a division | ) |
| of Henry County, Tennessee, | ) |
| | ) |
| Defendant/Appellee. | ) |

FILED

December 2, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT OF HENRY COUNTY
AT PARIS, TENNESSEE
THE HONORABLE WALTON WEST, CHANCELLOR

**A. RUSSELL LARSON**
Jackson, Tennessee
Attorney for Appellant

**LEE M. GREER, III**
**GREER & GREER, ATTORNEYS**
Paris, Tennessee
Attorney for Appellee

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HOLLY KIRBY LILLARD, J.**

Plaintiff, Jeri St. John ("St. John" or "Appellant") appeals the trial court's judgment

in favor of Defendant, Beer Permit Board ("Beer Board" or "Appellee") denying St. John a beer permit for her business "Jeri's" n/k/a "The Foxy Lady."

## I. Factual and Procedural History

St. John operates a business in Paris, Henry County, Tennessee, on Highway 79. In the course of operating her business, St. John filed a request with the Henry County Beer Permit Board for a permit to sell beer on the premises. A hearing was held on June 5, 1997, at which time a decision was delayed so that additional information could be gathered about the precise location of the proposed establishment, its proximity to surrounding residences and the traffic situation. On July 1, 1997, another hearing was held and the permit was denied. A trial was then held in Chancery Court.

By stipulation both parties agreed that the "300 foot rule" authorized by Tenn. Code Ann. §57-5-105(g) had been adopted by the Henry County legislative body in 1976. The "300 foot rule" forbids the sale of beer within 300 feet of a residential dwelling, provided the owner of the residential dwelling appears in person before the County Beer Board and objects to the issuance of such permit or license. The parties stipulated further that Mr. and Mrs. Garrigus owned property adjacent to the proposed location, which included a main dwelling house and several trailers, one of which was on the front portion of the property located within 300 feet of the proposed building.

Mrs. Garrigus appeared and testified at the hearing before the Beer Permit Board and at trial, opposing the issuance of a beer permit to appellant. Mrs. Garrigus stated that she stayed overnight in that mobile home sometimes two or three nights a week during part of the year (six or eight months a year) because it was not air conditioned like the main dwelling and it was better for her knees. The property had also been used as a residence by her children, and a friend of her daughter and other house guests spent the night there on occasion. They also made use of the trailer to entertain company by playing cards, etc. Mrs. Garrigus characterized the trailer as her "extra bedroom." The trailer was furnished

with a stove, kitchen cabinets, bed, rocking chair, couch, a couple of tables and a chair. The trailer's only source of electricity is by an extension cord from the main house and this is done to avoid the expense of a separate meter.

The Appellant opened her nightclub prior to trial. Mrs. Garrigus testified that this caused some traffic problems as the driveway to her property is close to the driveway of appellant's property and patrons of the nightclub would pull into the Garrigus driveway by mistake. Chief Deputy Mike Jenkins testified that there had never been a commercial establishment at that location before. He testified as to some visibility problems where the driveway joined the highway, but that as one moves down the driveway near the edge of the highway there is not a visibility problem. He testified he did not see the ingress and egress situation as being a problem sufficient to have notified the state highway department, although that is not part of a deputy's routine job.

Jack Hays, a resident of the area with 40 years experience in the highway business testified as to plans for construction or change in the highway. A hearsay objection was sustained. Upon offer of proof he indicated the plans were for a four-lane highway divided by a median. He indicated that after those changes, negotiating a left turn into the establishment would involve crossing over 72 feet of oncoming traffic. Outside the offer of proof, he indicated that his examination of Department of Transportation records showed the current 24 hour traffic count at the location in question was "7,000 plus."

After the trial concluded, the chancellor issued a Memorandum opinion which denied the permit based on the "300 foot rule" and because the proposed site would constitute a traffic hazard. This appeal by St. John followed.

## II.  "Residential Dwelling"

Tennessee Code Annotated §57-5-105 addresses the issuance of beer permits and

3

the process by which such permits may be obtained. Section (g) of this statute specifically addresses what is known as the "300 foot rule."

> **§57-5-105(g)** Class "A" counties, by resolution of their county legislative bodies, may forbid the sale of beer within three hundred feet (300') of a residential dwelling, measured from building to building, provided the owner of the residential dwelling appears in person before the county beer board and objects to the issuance of such permit or license . . .

The parties stipulated that this provision had been adopted by the Henry County legislative body in 1976. The parties further stipulated that such an objection was properly lodged by Frances Garrigus and that the Garrigus trailer is within 300 feet of St. John's building. The conflict here turns on whether the trailer constitutes a "residential dwelling" for the purposes of the statute.

The term "residential dwelling" is not defined in the statute. In the trial court, the chancellor opined that if a structure is used or is intended to be used or has the present viable capability of being used as a place of abode, it would constitute a residential dwelling. The chancellor further relied on the case of State v. Berry, 598 S.W.2d 828 (Tenn. Cr. App. 1980) which stated that "there is no requirement in the law that a house be continually occupied in order to be a dwelling. It is sufficient that it is occasionally occupied for residential purposes." The Berry case goes on to state that where a person establishes one or more homes as a dwelling house, each retains the character of an inhabited dwelling house so long as he intends each to be a place of habitation for himself, even though he is absent from it for a period of time. Berry at 830.

It is the policy of the courts, generally, to give to statutory provisions regulating the sale of intoxicating liquors a construction liberally in favor of the regulations and the places or institutions which they are designed to protect and strictly against the applicants for beer or liquor licenses or permits. Y & M v. The Beer Commission or Board of Johnson County, Tennessee, 679 S.W.2d 446, 447(Tenn. 1984). It has been recognized that the needs and desires of those in the locality particularly affected by an establishment that sells intoxicating beverages are important and that the existence of such an establishment in

4

close proximity to the property of others may adversely affect the value of their property. Davis v. Blount County Beer Board, 621 S.W.2d 149, 152 (Tenn. 1981).

There was evidence in this case that Mrs. Garrigus has occupied and continues to occupy the trailer on several nights a week during the warm months because of her arthritic knees. There was testimony that her children had lived in the home on a periodic basis in the past. The trailer was used as a place to socialize with guests and there was testimony that guests occasionally spent the night in the trailer.

The Garrigus family uses this trailer for residential purposes. The statute was enacted to protect such persons from the effects of an establishment that sells intoxicating beverages in close proximity to their dwelling. Under a liberal construction of the statute, a trailer located within the curtilage of the main home, which is from time to time used as a primary and continuous dwelling, and which is otherwise used intermittently by the family or some part of it as an extension of the main dwelling (i.e. for the purpose of sleeping, entertaining, and accommodating overnight visitors), is clearly a "residential dwelling" within the meaning of the statute.

In cases involving beer permits, there exists on appeal a presumption of the correctness of the findings of the trial judge. Those findings will not be disturbed on appeal unless the evidence preponderates against them. Claiborne County Beer Board v. Poore, 556 S.W.2d 87, 88 (Tenn. 1977). For the foregoing reasons, this Court holds that the evidence does not preponderate against the chancellor's finding that the Garrigus trailer constituted a residential dwelling under Tenn. Code Ann. §57-5-105(g).

### III. Traffic Hazard

Tennessee Code Annotated §57-5-105(b)(1) states that "no beer will be sold except at places where such sale will not cause congestion of traffic . . . or otherwise interfere with public health, safety and morals." At trial, the Chief Deputy for the Henry County Sheriff's

5

Department testified that visibility for egress from St. John's business onto a state highway was impaired by an existing "dirt bank." Various photographs were introduced depicting St. John's drive as it connects to a state highway.

The chancellor held that after evaluating the photographic exhibits and considering all evidence on the issue, the present embankments along the existing drive cause an impaired visibility onto the highway and result in an undue traffic hazard. The chancellor further found that if the embankments along the drive were lowered so as to provide a reasonable view of the highway traffic prior to entering the highway, there would otherwise appear to be no basis for denying the permit on the basis of a traffic hazard.

Appellant argues that under the holding in Hinkle v. T.E. Montgomery, 596 S.W.2d 800, 801(Tenn. 1980), in order for traffic congestion to constitute a valid basis for denying a permit to sell beer in the package it must be shown that the issuance of a permit would cause traffic to be more congested and more hazardous than it was prior to the issuance of the permit. In Hinkle, the trial court denied the permit upon the ground that the issuance of the permit would cause such an increase in traffic as to constitute a hazard to the traveling public at the intersection. The holding in Hinkle therefore addresses the necessary showing when the board is denying the permit based on congestion.

In the case at hand the chancellor denied the permit to St. John based upon the traffic hazard to the traveling public on the highway and the patrons leaving the establishment, due to the impaired visibility along the egress. The chancellor was not denying the permit based upon the "congestion of traffic" provision of the statute, but rather the "public health and safety" provision. The courts do have the authority to determine, from evidence in the record, if a particular permit would interfere with public health, safety, and morals. Ewin v. Richardson, 399 S.W.2d 318 (Tenn. 1966). Appeals to this Court in cases involving beer permits are accompanied by a presumption of the correctness of the action of the trial judge. Such action will not be disturbed on appeal unless the evidence preponderates against it. Coffman v. Hammer, 548 S.W.2d 310, 311 (Tenn. 1977). We

do not find that the evidence preponderates against the decision of the chancellor on this question.

## IV. Conclusion

The judgment of the trial court is hereby affirmed. Costs of this appeal are taxed to Appellant, for which execution may issue if necessary.

_____

HIGHERS, J.

CONCUR:

_____

CRAWFORD, P.J., W.S.

_____

LILLARD, J.