IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 18, 2005 Session

## AHMED AL-KOSHSHI d/b/a LAMAR EXPRESS v. MEMPHIS ALCOHOL COMMISSION

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-002229-04    John R. McCarroll, Jr., Judge**

---

**No. W2004-02783-COA-R3-CV - Filed July 19, 2005**

---

This case involves the denial of a beer permit.  The beer board denied the appellant's application for a beer permit because of the detrimental effect that beer sales would have on the health, safety, and morals of the community.  The appellant filed a petition for writ of certiorari, and the trial court upheld the beer board's decision.  The appellant appeals.  We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Rex L. Brasher, Jr., Memphis, Tennessee, for the appellant, Ahmed Al-Koshshi.

Sara L. Hall, City Attorney and Michael W. Hughes, Assistant City Attorney, for the appellee, Memphis Alcohol Commission.

### OPINION

### I.

In this case, Plaintiff/Appellant Ahmed Al-Koshshi ("Mr. Koshshi" or "Appellant") acquired by sublease a convenience store ("Lamar Express") located at 1243 Lamar Avenue in Memphis, Tennessee.  Lamar Express sits on the southeast corner of the intersection of Lamar and Bellevue Avenues in a heavily trafficked area of Memphis.  Three schools are located near Lamar Express, namely Bruce Elementary School, Bellevue Junior High School, and Central High School.  Additionally, the convenience store is located in the immediate vicinity of the Annesdale-Snowden area of Memphis.

After taking over operations of Lamar Express, Appellant applied for a beer permit with the Memphis Alcohol Commission (the "Beer Board").[1] Members of the Annesdale-Snowden Homeowners Association were present at the April 7, 2004 hearing before the Beer Board to voice their opposition to the sale of beer at Lamar Express. According to their testimony before the Beer Board, the corner where Lamar Express is located had significantly improved since beer sales had ceased. The Beer Board denied Appellant's application because of the effect that beer sales would have on the health, safety, and morals of the community.

Subsequently, Appellant filed a Petition for Writ of Certiorari, and a bench trial was held on August 31, 2004. The parties stipulated at the beginning of trial that Lamar Express was properly zoned for the sale of beer, and the sole issue before the lower court was whether the sale of beer for off-premises consumption would interfere with the health, safety, and morals of the community. Witnesses for the Beer Board testified that, when beer was being sold at Lamar Express, litter in the form of beer bottles and cans, used needles and condoms, and other sordid debris could be found in the area. In addition, there was testimony that prostitution, loitering, and public consumption of alcohol took place on a regular basis in the neighborhood while beer sales were permitted at Lamar Express. However, these witnesses testified that these conditions had dramatically improved as a direct result of the stoppage of beer sales at Lamar Express. In contrast, Appellant and the manager of Lamar Express, Hamad M. Al-Halabi ("Mr. Halabi") testified that Mr. Halabi cleans the parking lot six to eight times daily and collects bags of litter generated by passers-by in car and on foot. Mr. Halabi also testified that he had been working with local police to prevent loitering and that police now patrol the area three times daily. Additionally, Mr. Halabi testified that Citgo Oil Company had recently purchased the convenience store and planned to make $65,000 worth of improvements. Mr. Halabi further stated that Appellant had installed security cameras inside and outside Lamar Express within one month of trial. With respect to neighborhood school children, Mr. Halabi testified that the bulk of the students patronize Alpha Express Shop, a larger convenience store on the opposite side of the street. Mr. Halabi stated that neighborhood children did not frequent Lamar Express because the schools were more convenient to Alpha Express Shop, and Lamar Express maintained a policy that prohibited more than two students in the store at the same time.

Upon the testimony of witnesses for both parties as well as the transcript of the Beer Board hearing, the trial court entered an order upholding the Beer Board's denial of the beer permit. In its order, the trial court specifically found that, because of Lamar Express's close proximity to neighborhood schools, beer sales would interfere with the community's health, safety, and morals. Additionally, the trial court reasoned that the amount of litter, loitering, and prostitution had lessened during the time that beer sales were halted.

---

[1] Mr. Koshshi acquired Lamar Express by assuming a lease from the original lessee of the premises, one Mr. Algehazi. Apparently, Mr. Algehazi withdrew an application for a beer permit because he had operated using a prior owner's permit and had sold beer while his application was pending before the Beer Board. Prior to Mr. Algehazi taking over the convenience store, another person maintained an active beer permit in the subject location for several years.

Appellant appeals the order of the court below.  On appeal, Appellant presents, as we perceive them, the following two issues:

> (1) Whether the evidence preponderates against the trial court's decision that the sale of beer for off-premises consumption would detrimentally interfere with the health, safety, and morals of the community, and

> (2) Whether, for purposes of the beer permit at issue in this case, section 57-5-109 of the Tennessee Code is dispositive or applicable to the question of proximity to a school or residence.

## II.

"Incorporated cities and towns in Tennessee are empowered to impose certain restrictions on the sale of beer within their jurisdiction." *Green v. City of Memphis*, No. 17, 1990 Tenn. App. LEXIS 360,  at *2 (Tenn. Ct. App. May 22, 1990)(citing Tenn. Code Ann. § 57-5-108(a)(1)).  The ordinance upon which the Beer Board and the trial court relied in denying Appellant's beer permit is found in section 4.71(a)(3) of the Code of Ordinances of the City of Memphis.  Under section 4.71(a)(3), a beer permit may be denied under the following circumstances:

> (a) No license shall be issued to sell any beverage coming within the provisions of this article:
> (3) Where such sale will cause congestion of traffic or interference with schools, churches or other places of public gathering, or otherwise interfere with public health, safety and morals, and the judgment of the alcohol commission on such matters shall be final, except as same is subject to review at law.

Memphis, Tenn., Code § 4.71(a)(3).  After stating that the above ordinance was controlling in the present case, the trial judge made the following oral findings from the bench:

> I think this case is distinguished from [*City of Memphis Alcohol Commission v. Randall Free Will Baptist Church, Inc.*, 550 S.W.2d 657 (Tenn. 1977)] because of the nature of the intersection at Bellevue and Lamar, the proximity of the three schools, the testimony of the witnesses as to the fact that they have had problems in the past with people loitering, with prostitution, that since the sale of beer has stopped at this location that that also has stopped.  I think that clearly, in my mind anyway, indicates that the sale of beer has had an [e]ffect on the public health, safety and morals, not only to the school children but on the neighborhood, and . . . in my opinion, the opinion of the beer board was correct and the license should be denied.

"Judgments granting or denying beer permits are accompanied by a presumption of correctness on appeal and, therefore, may not be overturned in the absence of a preponderance of evidence to the contrary." *Harvey v. Rhea County Beer Board*, 563 S.W.2d 790, 792 (Tenn. 1978) (citing *Coffman v. Hammer*, 548 S.W.2d 310 (Tenn. 1977); *Lones v. Blount County Beer Board*, 538 S.W.2d 386 (Tenn. 1976)). We begin by noting that the trial court expressly found that there was no evidence that the sale of beer would unduly increase traffic congestion at the intersection. Thus, our review is limited to the evidence establishing that the sale of beer would "otherwise interfere with public health, safety and morals." Appellant insists that there was insufficient evidence to show that the issuance of a beer permit at this particular location will interfere with public health, safety, and morals. Rather, Appellant argues that any improvement in the amount of litter and loitering at the subject intersection is the result of Appellant's personal efforts to remedy these conditions, not a product of the discontinuance of beer sales. The Beer Board, conversely, argues that there is ample evidence in the record supporting the trial court's decision. After reviewing the record, we are of the opinion that the evidence linking the discontinuance of beer sales at Lamar Express to the improved aesthetic nature of the intersection is tenuous at best. Accordingly, we conclude that the evidence preponderates against the trial court's judgment denying a beer permit in this case.

First, the record reflects that there is at least two other outlets within the immediate area of Lamar Express with permits to sell beer for off-premises consumption. There is a Pure Oil convenience store within two to four blocks of Lamar Express that sells beer. It also appears from the record that there is another convenience store on the ground floor of an apartment building located within approximately one block of Lamar Express that sells beer for off-premises consumption. Additionally, located directly across the street from Lamar Express is a restaurant which maintains a beer permit for on-premises consumption. Although witnesses for the Beer Board testified that litter in the area had diminished since beer sales ceased, there is nothing compelling in the record to suggest that this improvement is not the result of Appellant's proactive approach to reducing litter and loitering in the area. Moreover, the Tennessee Supreme Court has suggested that litter and trash found along our public roads affords no basis for the denial of a beer permit. *See Coffman v. Hammer*, 548 S.W.2d 310, 312 (Tenn. 1977) ("[B]eer drinkers have no monopoly on that unfortunate predilection of some members of the public to mar the beauty of public thoroughfares. . . .").

In addition, there was testimony that the amount of prostitution had decreased. While this may be true, we are unable to see how the reduction in prostitution is causally connected to the cessation of beer sales at Lamar Express, especially in view of the fact that beer sales take place within walking distance of the convenience store and the fact that at least one witness for the Beer Board testified that prostitutes generally remained on the opposite side of the street where a motel is located.

With respect to the effect of beer sales on neighborhood children, there was nothing but generalized testimony as to the number of children which frequented the area. Further, many of the witnesses could only speculate as to the amount of children who passed by the convenience store. In contrast, Appellant maintains a policy that prohibits more than two school-aged children at one

time inside Lamar Express. Additionally, Mr. Halabi testified that the bulk of the students took their business to Alpha Express Shop across the street.

While the question of whether beer sales, in general, are harmful or immoral is one exclusively for the General Assembly, "[t]he courts do have authority to determine, from evidence in the record, if a particular permit would interfere with public health, safety and morals." *Ewin v. Richardson*, 399 S.W.2d 318, 320 (Tenn. 1966). Upon review of the record, we simply cannot find that the evidence supports the trial court's decision. In view of the fact that Lamar Express is in a locality where other outlets sell beer, we are unable to see how the issuance of this particular beer permit would interfere with the public health, safety and morals. Moreover, our research has yielded numerous cases in this state with facts substantially similar to the case at bar. However, we have found no case with similar facts where our appellate courts have affirmed the denial of a beer permit because of its potential interference with public health, safety and morals. *See, e.g.*, *Harvey v. Rhea County Beer Board*, 563 S.W.2d 790 (Tenn. 1978); *City of Memphis Alcohol Commission v. Randall Memorial Free Will Baptist Church, Inc.*, 550 S.W.2d 657 (Tenn. 1977); *Coffman,* 548 S.W.2d at 310; *Lones v. Blount County Beer Board*, 538 S.W.2d 386 (Tenn. 1976); *Ewin*, 399 S.W.2d at 320; *Green v. City of Memphis*, No. 17, 1990 Tenn. App. LEXIS 360, at *2 (Tenn. Ct. App. May 22, 1990). We do not believe that the evidence in this case is sufficient to break from the great weight of authority in this state on this issue.

III.

Accordingly, we reverse the judgment of the trial court. In view of our opinion in this case, Appellant's second issue is pretermitted. Costs of this appeal are taxed to the Appellee, Memphis Alcohol Commission, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE